# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GEORGE R. MACFARLANE, in his own right, by and through his power of attorney, Mary Beth Lewis,<br>    Plaintiff<br><br>    v.<br><br>THE PAVILION AT BRADFORD REGIONAL MEDICAL CENTER, et al.,<br>    Defendants. | C.A. No. 17-12 Erie<br><br>**District Judge Susan Paradise Baxter** |

## MEMORANDUM OPINION

### I. INTRODUCTION

#### A. Relevant Procedural History

On January 17, 2017, Plaintiff George R. MacFarlane, an adult resident of the State of New York, initiated this action in his own right and by and through his power of attorney, Mary Beth Lewis, against Defendants The Pavilion at Bradford Regional Medical Center ("The Pavilion"), a skilled nursing facility, and Bradford Hospital ("Bradford"), both having principal places of business in McKean County, Pennsylvania. Plaintiff asserts professional liability claims against Defendants arising from the sexually inappropriate touching of Plaintiff by another resident on January 27, 2015, which allegedly resulted in the removal of Plaintiff's right testicle approximately eight months later. As relief for his claims, Plaintiff seeks monetary damages in excess of the jurisdictional limit of 28 U.S.C. § 1331.

Now pending before this Court is Defendants' motion for summary judgment [ECF No. 50], asserting that Plaintiff did not suffer an injury from the incident at issue, and is, thus, unable to prove causally related harm, as a matter of law. Alternatively, Defendants argue that, pursuant

1

to Pennsylvania's Mental Health Procedures Act, 50 Pa.C.S. § 7114(a), Plaintiff is required to prove that Defendants were grossly negligent in order to establish liability, which Plaintiff cannot do as a matter of law. Plaintiff has since filed a brief in opposition to Defendant's motion [ECF No. 55], to which Defendant has filed a reply brief [ECF No. 59]. This matter is now ripe for consideration.

### B. Relevant Factual History[1]

At the time of the incident at issue in this case, Plaintiff was an 87-year old male who suffered from dementia with periods of delusions. (ECF No. 51, at ¶ 1). In addition, Plaintiff had no short-term memory. (Id. at ¶ 2). Plaintiff entered The Pavilion as a resident in 2006 because his family felt he was no longer able to live independently. (Id. at ¶ 4).

Sometime in the Fall of 2014, Richard Knight ("Knight"), a diagnosed schizophrenic, was admitted as a resident at The Pavilion and was assigned to the same room as Plaintiff. (Id. at ¶ 10). On one occasion in October or November 2014, Plaintiff's son witnessed Knight give Plaintiff a "wet Willie" by putting a wet finger in Plaintiff's ear. (Id. at ¶ 11). Plaintiff's son told Knight never to touch his father again and then complained to The Pavilion staff, who also instructed Knight not to touch Plaintiff. (Id. at ¶¶ 13-14). After this incident, Plaintiff's family never witnessed Knight touch Plaintiff again, nor did they make any other complaints to staff regarding Knight. (Id. at ¶ 14, 16).

In November and December 2014, Plaintiff complained of testicular pain and was treated with antibiotics for a urinary tract infection by urologist, Dr. Godfrey. (Id., at ¶¶ 7-8). In addition, a testicular ultrasound conducted on January 8, 2015, revealed a 2.27 cm mass on

---

[1] The factual history set forth herein has been gleaned from Defendants' concise statement of material facts [ECF No. 51], to the extent the facts set forth therein are unopposed and/or amply supported by the evidence of record.

Plaintiff's right testicle. (ECF No. 52, at p. 65). Nonetheless, Plaintiff's complaints of testicular pain ended in December 2014, and he had no complaints of such pain in January 2015 (Id., at ¶¶ 8-9). In fact, Plaintiff's medical records reflect that Plaintiff was not prescribed any new pain medications between January 1, 2015, and September 2015. (ECF No. 52, at pp. 193-94).

On the night of January 27, 2015, Tasha Davis ("Davis"), a Certified Nursing Assistant ("CNA"), heard Plaintiff saying "stop doing that, get that monkey out of here," and then walked into Plaintiff's room and witnessed Knight sitting on Plaintiff's bed with his hand under Plaintiff's blanket touching Plaintiff's genital area. (ECF No. 51, at ¶¶ 25-26; ECF No. 52 at p. 72, and at p. 134 (internal p. 30)).[2] After Davis instructed Knight to get off Plaintiff's bed and return to his side of the room, Davis asked Plaintiff if everything was okay, but he was unable to tell her what had just occurred because, according to Davis, "he really wasn't with it himself to know what was going on." (ECF No. 51, at ¶¶ 27, 29; ECF No. 52, Davis deposition transcript, at p. 135 (internal p. 35)). The shift nurse, Miranda Fuller ("Fuller"), was immediately called to the room. (ECF No. 51, at ¶ 28). When Fuller arrived she spoke to Plaintiff, who didn't recall the incident and didn't know what she was talking about when she asked about it. (Id. at ¶ 32; ECF No. 52, Fuller deposition transcript, at p. 127 (internal p. 52)). Fuller then conducted a full physical examination of Plaintiff and did not find any indication of an injury. (ECF No. 51, at ¶ 38).

The police arrived an hour or two later and questioned Plaintiff, but he had no recollection of the incident. (Id. at ¶ 33). On the day following the incident, nursing records reflect that when Plaintiff was asked how his night was, he responded, "I slept good, no

---

2 Another CNA, Jen Therrien, was also present at the time and witnessed Knight sitting on the side of Plaintiff's bed with his hand down the front of Plaintiff's pants. (ECF No. 52, at pp. 125-126).

problems here sister," and made no mention of the incident. (Id. at ¶ 34). Plaintiff's genitals were also examined by a nurse on the same day, and no bruises, scratches, discoloration, or indication of injury was found. (Id., at ¶ 39). Plaintiff was later examined by his doctor on January 30, 2015, and no injury, bruising, or complaints were noted. (Id., at ¶ 40). Since the incident occurred, Plaintiff has never mentioned or referenced either the incident or Knight to his family, nor has he said anything that would indicate that he recalls the incident. (Id. at ¶¶ 36, 42).

On September 6, 2015, Plaintiff consulted with Dr. Godfrey regarding the mass on his right testicle. (ECF No. 52, at p. 194). On September 17, 2015, Plaintiff's right testicle was surgically removed by Dr. Godfrey. (ECF No. 51, at ¶ 45). Dr. Godfrey's operative report indicated that the mass near Plaintiff's testicle did not change in character over the eight months it was present and that Plaintiff's pain had actually gone away, and, thus, confirmed that the mass that was removed was not related to any trauma. (Id., at ¶ 48). Defendants have since produced the expert report of Stanley Zaslau, a board-certified urologist, who reviewed Plaintiff's medical records and opined that there is no evidence of injury to Plaintiff as a result of any touching by Knight. (Id., at ¶¶ 50-51). Instead, Dr. Zaslau concluded that Plaintiff's testicular issues were caused by a pre-existing underlying medical condition related to urinary tract infections and not trauma. (Id., at ¶ 52). Plaintiff has not produced an expert report to the contrary. (Id.).

## II. DISCUSSION

Pennsylvania substantive law governs the negligence claims raised by Plaintiff in this diversity action. See Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Under Pennsylvania law, a plaintiff must prove: (1) the existence of a legal duty requiring a certain standard of conduct; (2) breach of that duty by

the defendant; (3) a causal connection between defendant's breach and plaintiffs' injury; and (4) actual loss or damages. Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 61 (3d Cir. 2009).

Here, Defendants argue that Plaintiff's negligence claims fail as a matter of law because the record evidence establishes that Plaintiff cannot prove he suffered any injury as a result of the incident at issue, which is the basis of Defendants' alleged breach. The Court agrees.

First, the record evidence is clear that there was no physical injury suffered by Plaintiff, as physical examinations conducted immediately after, and within days following, the incident revealed no bruises, scratches, discoloration, or complaints of pain. Moreover, Plaintiff's allegations attempting to link the surgical removal of Plaintiff's right testicle in September 2015 to the subject incident that occurred approximately eight months earlier have been debunked by the unrefuted medical opinions of Drs. Godfrey and Zaslau.

Second, it is plain that Plaintiff experienced no immediate or long-term harm or trauma from the incident, as evidenced by his complete lack of recollection of the incident moments after it occurred, and his subsequent lack of mentioning either the incident or Knight at any time to anyone.

Nonetheless, while acknowledging Plaintiff's total absence of recall, Plaintiff's counsel contends that Plaintiff had a "present sense impression that he had been violated," as evidenced by the fact that he was overheard saying "stop doing that, get that monkey out of here" at or near the time he was being inappropriately touched by Knight. (ECF No. 55, at p. 7). Based on this evidence alone, Plaintiff's counsel argues that a jury determination exists as to whether Plaintiff suffered a compensable injury. In support of this argument, Plaintiff cites the case of Guernsey v. Country Living Personal Care Home, 2006 WL 1412765 (M.D. Pa. May 19, 2006), in which the Middle District Court was faced with comparable facts.

In Guernsey, the plaintiff, an elderly female nursing home resident with a moderate case of dementia, was sexually assaulted by a younger male resident at the same nursing home. As a result, the plaintiff filed suit against the nursing home and its owners alleging four separate claims of negligence. Defendants' expert psychiatrist opined that there was no reliable evidence of the victim recalling the event after more than a day or two and, thus, the court concluded that the plaintiff did not suffer any long-term trauma from the assault at issue. Guernsey, at *10. In addition, there was no evidence of physical injury. However, it was undisputed that the plaintiff "did experience adverse consequences during the rape and shortly after the rape, and that she wanted to avoid [the perpetrator] at the lunch table the next day." Id. It was also undisputed that the plaintiff "was not her usual self the day after the rape." Id. Thus, the court accepted the testimony of Plaintiff's expert that Plaintiff "showed signs of short-term memory of the sexual misconduct" sufficient to establish liability for negligence and to sustain an award of damages. Id., at *16.

Such is not the case here. Unlike the plaintiff in Guernsey, the Plaintiff in this case did not exhibit any signs of short-term memory or any behaviors that indicated he suffered from any short-term trauma as a result of the incident at issue. To the contrary, the record contains evidence that Plaintiff had no recollection of the incident immediately after it occurred and woke up the next morning proclaiming that he "slept good" and had "no problems," without any mention of the incident. (ECF No. 51, at ¶ 34). Thus, there is simply no evidence here to support a finding that Plaintiff suffered an injury causally related to Defendants' alleged breach of duty that allegedly caused the assault of January 27, 2015.

The Court does not make this finding lightly. What was done to Plaintiff is deplorable and heart-wrenching. No elderly patient should ever be preyed upon, nor should any family have

to endure the emotional turmoil that comes with knowing that their loved one was touched inappropriately. Yet, the Court has been presented with no evidence in this case to prove that Plaintiff was either fully aware of, or adversely affected by the incident at issue, as a matter of law. Summary judgment is, thus, appropriate to avoid the prospect of sympathetic jurors conjuring up injuries and damages that are not legally sustainable. Defendants' motion for summary judgment will be granted, accordingly.[3]

    An appropriate Order follows.

---

[3] Because the Court has determined that Defendants are entitled to summary judgment based on Plaintiff's inability to prove injury, the Court has no reason to address Defendant's argument that Plaintiff is unable to prove gross negligence under the Mental Health Procedures Act, 50 P.S. § 7114(a), nor does it make any finding as to the applicability of the Act to the facts of this case.